THE OLD DOMINION COPPER MINING AND SMELTING
COMPANY, RESPONDENT, v. THE STATE BOARD OF
TAXES AND ASSESSMENTS AND THE COMPTROLLER
OF THE TREASURY, APPELLANTS.

Argued June 27, 1917—Decided March 12, 1918.

1. The act of April 18th, 1884, entitled "An act to provide for the
imposition of state taxes upon certain corporations, and for the
collection thereof" (*Pamph. L.*, *p.* 232), imposes a *yearly* license
fee or tax of one-tenth of one per cent. upon the amount of the
capital stock of so-called "miscellaneous corporations," but con-
tains no express designation of the beginning or ending of the
annual period which the tax is to cover. *Held*, that, by reason-
able implication, this annual period appears to have been intended
by the legislature to begin on the 18th day of April of each year.
2. The supplement to the Tax act of 1884 which went into effect
February 19th, 1901 (*Pamph. L.*, *p.* 31), contains no indication
of a purpose on the part of the legislature to substitute a new
date, as the beginning of the annual taxing period, in the place
of that fixed by the original enactment.
3. Supplements are merely additions to, or alterations of, a primary
statute, engrafted upon it, and to be read as a part of it; so much
of the original act as it altered by the supplement is superseded
by it, but that which remains unchanged, although reiterated in
the supplement, continues to be primary legislation.
4. Although double taxation is not invalid, yet a construction of the
law which would authorize such double taxation is not to be
adopted unless it is required by the express terms of the statute,
or by necessary implication.

---

On appeal from the Supreme Court, whose opinion is re-
ported in 90 *N. J. L.* 364.

For the appellants, *John W. Wescott,* attorney-general, *Herbert Boggs,* assistant attorney-general, and *Francis H. McGee.*

For the respondent, *Collins & Corbin.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    The respondent, having by the vote of its stockholders resolved to terminate its corporate existence by a voluntary dissolution, filed with the secretary of state, prior to the 24th of March, 1917, the written consent of the stockholders thereto, in accordance with the requirement of the statute; and thereupon requested that officer to issue to it the formal certificate of its dissolution.    This, however, the secretary of state refused to do upon the ground that, under the provision of section 31*a* of the Corporation act (*Comp. Stat., p.* 1620), the respondent was not entitled to such a certificate until all taxes assessed and levied against it had been paid, and that, as reported to him by the comptroller of the treasury, the taxes for the year 1917 were an existing obligation against it.

The soundness of this contention, and the legal propriety of the refusal of the secretary of state, depend upon the true construction of the various statutory provisions bearing upon the obligation of the respondent to pay taxes to the state. These provisions are found in the act of April 18th, 1884, entitled "An act to provide for the imposition of state taxes upon certain corporations, and for the collection thereof" (*Pamph. L., p.* 232), and its pertinent supplements, which will hereafter be specifically referred to.

The act of 1884 provided for the imposition "of an annual tax for the use of the state by way of a license for its corporate franchise," upon certain specified corporations of the state of a *quasi*-public character and directed that on or before the first Tuesday of May then next, and annually thereafter, each of such corporations should make report to the state tax board of the gross amount of its annual receipts. Some of such companies were required to state the receipts

for the year preceding the 1st day of January prior to the making of the report, and others the receipts for the year preceding the 1st day of February prior to the making of such report. The statute then provided that each of these companies should pay a tax at the rate of a specified percentage upon such receipts so returned and ascertained; the percentage varying in accordance with the character of the corporation. Having thus dealt with these *quasi*-public corporations the legislature then declared, in section 4 of the act, "that all other corporations incorporated under the laws of this state, and not hereinbefore provided for, shall pay a yearly license fee or tax of one-tenth of one per cent. on the amount of the capital stock of such corporation," with a proviso that the statute should not apply to railway, canal or banking corporations, saving banks, cemeteries, religious corporations, charitable or educational associations, or manufacturing companies, or mining companies carrying on business in the state.

The corporations affected by this last-recited provision of the act are usually designated by the state taxing authorities as "miscellaneous corporations," one of which is the present respondent.

Only two supplements to the original statute require considerations in the solution of the problem which the case presents. The first of them is that of March 17th, 1892. *Pamph. L., p.* 136. It amends that part of the fourth section of the original act which provides for a tax upon "miscellaneous corporations" so as to read as follows: "That all other corporations incorporated under the laws of this state, and not hereinbefore provided for, shall make annual return to the state board of assessors of such information as may be required by said board to carry out the provisions of this act, and shall pay an annual license fee or franchise tax of one-tenth of one per centum on all amounts of capital stock issued and outstanding up to and including the sum of three million dollars; on all sums of capital stock issued and outstanding in excess of three million dollars, and not exceeding five million dollars, an annual license fee or franchise tax of one-twentieth of one per centum; and the further sum of fifty

dollars per annum per one million dollars, or any part thereof, on all amounts of capital stock issued and outstanding in excess of five million dollars;" with a proviso that the supplement shall not apply to the corporations exempted in the original act.

The second supplement is that of February 19th, 1901. *Pamph. L., p.* 31. It provides that all so-called miscellaneous corporations "shall make annual return to the state board of assessors on or before the first Tuesday of May in each year, and shall state therein the amount of the capital stock of such corporation issued and outstanding on the first day of January preceding the making of said return, together with such other information as may be required by said board to carry out the provisions of this act, and shall pay an annual license fee or franchise tax of one-tenth of one per centum on all amounts of capital stock issued and outstanding up to and including the sum of three million dollars; on all sums of capital stock issued and outstanding in excess of three million dollars, and not exceeding five million dollars, an annual license fee or franchise tax of one-twentieth of one per centum, and the further sum of fifty dollars per annum per one million dollars, or any part thereof, on all amounts of the capital stock issued and outstanding in excess of five million dollars." This supplement then proceeds to exempt the several classes of corporations specified in the original act of 1884. The situation, then, disclosed by a reading of the statute and its two supplements, is this: In 1884 the tax was created and its amount fixed, but no provision was made for supplying the state tax board with the information necessary to enable it to assess the tax, nor was there any express declaration as to the beginning or ending of the annual period which the tax was to cover. In 1892 the statute was supplemented by requiring these corporations to furnish annually to the state tax board such information as it might require for the purpose of enabling it to accurately assess the tax; and amended by reducing the amount of the tax assessable against corporations having a capital stock exceeding $3,000,000 in amount. And in 1901 the statute was further

JUNE TERM, 1917.            177

*91 N. J. L.*    Old Dominion C. M. & S. Co. v. State Bd. Taxes.

supplemented by requiring these corporations to make report on or before the first Tuesday of May in each year of the amount of its capital stock outstanding on the preceding 1st day of January. Summed up, the only expressed changes made in the original act by the two supplements are (1) the reduction of the tax imposed thereby as to corporations having over $3,000,000 of capital stock, and (2) the obligation imposed upon these corporations of furnishing to the state tax board by a formal report on or before a designated date, the information specified in the supplements.

The arguments, both of counsel for the state and of the Old Dominion company, are based upon the theory (apparently) that the supplement of 1901 is original legislation, creating a new tax and designating by implication the period which it shall cover; the contention on the part of the state being that the requirement that each corporation shall report the amount of its capital stock outstanding on the 1st day of · January, indicates a legislative purpose that the annual period shall commence on that date; while the Old Dominion company contends that the requirement that the annual report shall be made on or before the first Tuesday in May of each year indicates that the legislature intended this latter date to mark the commencement of the annual period.

Both contentions, as it seems to us, rest upon an unsound basis. The supplement of 1901 is not original legislation. It does not create a new tax but merely provides additional machinery for the more certain ascertainment of the amount of the tax to be paid by these corporations under the act of 1884, and the assessment thereof. *Supplements* are merely additions to or alterations of a primary statute, engrafted upon it, and to be read as a part of it. So much of the original act as is altered by the supplement is superseded by it, but that which remains unchanged although reiterated in the supplement continues to be primary legislation. Citation in support of so elementary a proposition is unnecessary.

As has already been pointed out, the act of 1884 contains no express declaration as to the beginning or ending of the annual period which the tax is to cover. The tax, however,

is imposed by way of a license fee for the privilege of exercising corporate franchises granted by the state (*Standard Underground Cable Co.* v. *Attorney-General, 46 N. J. Eq. 270, 273*), and is in the nature of a compensation to be paid by the corporation for the enjoyment of such privilege during an annual period; and the fact that the statute contains no express declaration upon the subject does not render the enactment incomplete, for, as was pointed out by Mr. Justice Dixon, in *Brewing Improvement Co.* v. *State Board of Assessors,* 65 N. J. L. 466 : "The act went into effect immediately upon its approval, which was on April 18th, and provided that the license fee or tax should be a yearly one; and we think the fair import of these circumstances is that the 18th day of April in each year marks the beginning of the yearly period for which the fee or tax is charged."

The legislature then having by the original statute fixed April 18th as the beginning of the yearly period, is there anything in the supplement of 1901 which indicates a purpose on the part of the legislature to substitute another date therefor? To us it seems as if the question almost answers itself. Such purpose must be exhibited either by express words or by reasonable implication. That there is no express declaration of such a purpose contained in the statute is self-evident. To read into it by implication a purpose to substitute a new date for that originally selected cannot be justified unless the legislature has made that purpose reasonably plain by indicating with some degree of certainty the new date which is to take the place of the old one. No such plain indication is perceived in the enactment; and, indeed, the present litigation can only be explained upon the theory that it does not exist.

Moreover, to impute to the law-making body such a purpose we must assume either that it intended to compel corporations of this class, which had come into existence prior to 1901, to pay double taxes for so much of that year as was included in the period between January 1st and April 18th, or to compel the state to lose so much of the tax as is attributable to the period from April 18th to the first Tuesday of May. On the one hand, although double taxation is not in-

valid, yet a construction of the law which would authorize it is not to be adopted unless it is required by the express terms of the statute, or by necessary implication (*Jersey City Gas Light Co. v. Jersey City,* 46 *N. J. L.* 194) ; and, on the other hand, no reason is perceived for attributing to the legislature a purpose to deprive the state of a substantial (in the aggregate) part of its annual revenue for the year.

It is suggested that the decision in *Hardin* v. *Morgan,* 70 *N. J. L.* 484 ; affirmed by this court in 71 *Id.* 342, is opposed to the view which we now express. We do not so consider it. All that was involved in the case referred to was whether a manufacturing corporation which claimed exemption from taxation was, since the enactment of the supplement of 1901, required to make a return to the state tax board of the amount of its capital invested in manufacturing in this state on the 1st of January next preceding the making of the return, and to submit its report thereof to the state tax board on or before the first Tuesday in May, in order to be entitled to the exemption provided by the statute. The question of the date upon which each annual period began to run was not involved in the determination of the case, nor is it referred to in the discussion contained in the opinion.

We conclude, therefore, that at the time when the respondent filed with the secretary of state the written consent of its stockholders to its dissolution, and requested that officer to issue to it the statutory certificate of that fact, the time for assessing and levying against it taxes for the year 1917 had not been reached, and, consequently, that such taxes were not then an existing obligation against it; and that, this being so, the comptroller of the treasury should have certified to the secretary of state that all taxes levied upon or assessed against the respondent had been paid, and that the secretary of state should have issued the certificate of dissolution as requested.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, JJ.   9.

*For reversal*—None.